UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

THOMAS C. EKAS, derivatively
on behalf of Nominal Defendant
CITRIX SYSTEMS, INC.,

    Plaintiff,

vs.

JOHN C. BURRIS, et al.,

    Defendants

  and

CITRIX SYSTEMS, INC.,

    Nominal Defendant
_____/

Case no. 07-61156-CIV-MARRA

STEVEN CROUSE, derivatively
on behalf of Nominal Defendant
CITRIX SYSTEMS, INC.,

    Plaintiff,

vs.

JOHN C. BURRIS, et al.,

    Defendants

  and

CITRIX SYSTEMS, INC.,

    Nominal Defendant
_____/

Case no. 07-61157-CIV-MARRA

**OPINION AND ORDER**

This cause is before the Court upon Defendants' Motion to Consolidate Cases [DE 6, case no. 07-61156], Plaintiffs' Motion to Remand to State Court [DE 10, case no. 07-61156], Defendants' Motion to Consolidate Cases [DE 10, case no. 07-61157] and Plaintiffs' Motion to Remand to State Court [DE 15, case no. 07-61157]. The Court has carefully considered the motions and is otherwise fully advised in the premises.

I.  Background

On August 14, 2007, Defendants filed a notice of removal of Ekas v. Burris, et al., state case no. 07-16114-11, and Crouse v. Burris et al., state case no. 07-16249-03, originally filed in the Circuit Court of the 17th Judicial Circuit, in and for Broward County, Florida [DE 1] pursuant to 28 U.S.C. § § 1446(a) and 1441(a).[1] According to the Notice of Removal, Defendants claim that this Court has original subject matter federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

Plaintiffs filed a verified derivative complaint on July 9, 2007 by shareholders on behalf of nominal defendant Citrix Systems, Inc. ("Citrix") against several members of its board of directors and executive officers for breach of fiduciary duties (Count I) and against the officers for unjust enrichment (Count II).  These claims arise out of allegations of Defendants' stock options backdating practices.  The Complaint alleges that, at the behest of the officer defendants, the director defendants improperly backdated stock option grants to make it appear as though the grants were made on dates when the market price of Citrix stock was lower than the market price

---

[1] With the exception of the names of the Plaintiffs, the Complaints are identical and the parties make identical arguments with respect to these motions.  Thus, for the purpose of these motions, the Court will treat this case as one action.

on the actual grant date. (Compl. ¶ 36). This resulted in an improper increase in the value of the options to the officer defendants and an improper reduction in the amount the officer defendants had to pay the company upon exercise of the options. (Compl. ¶ 36).

In explaining the duties of the officers and directors of Citrix, the Complaint states that they were required to:

> a. exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business.
> b. exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state law, rules, regulations and requirements, including acting only within the scope of its legal authority.
> c. exercise good faith in supervising the preparation, filing, and/or dissemination of financial statements, press releases, audits, reports or other information concerning the financial condition of the Company and
> d. exercise good faith in ensuring that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and
> e. refrain from unduly benefitting themselves and other Company insiders at the expense of the Company.

(Compl. ¶ 21.)

With respect to maintaining and establishing adequate internal accounting controls for the Company, the Complaint states that the individual defendants were required to:

> (1) make and keep books, records and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer, and
> (2) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that:
> > (a) transactions are executed in accordance with management's general or specific authorization;
> > (b) transactions are recorded as necessary to permit preparation of financial statements in conformity with GAAP.

(Compl. ¶ 22.)

The Audit Committee, consisting of several of the director defendants, was responsible for

3

overseeing the accounting and financial reporting processes of Citrix and the audits of the Company's financial statements. (Compl. ¶ 24.) To accomplish that objective, the Audit Committee was responsible for the following:

> a. Review[ing] the financial reports provided by the Company to the SEC, the Company's stockholders or general public;
> b. Review[ing] the Company's internal financial and accounting controls;
> c. Oversee[ing] the appointment, compensation, retention and work performed by any independent public accountants engaged by the Company;
> d. Oversee[ing] procedures designed to improve the quality and reliability of the disclosure of the Company's financial condition and results of operations; Serv[ing] as the Qualified Legal Compliance Committee of the Company in accordance with Section 307 of the Sarbanes-Oxley Act of 2002 [ ] and the rules and regulations promulgated by the SEC thereunder.
> e. Recommend[ing], establish[ing] and monitor[ing] procedures designed to facilitate (i) the receipt, retention and treatment of complaints relating to accounting, internal accounting controls or auditing matters, and (ii) the receipt of confidential, anonymous submissions by employees of concerns regarding questionable accounting or auditing matters.
> f. Engag[ing] advisors as necessary; and
> g. Determin[ing] the funding from the Company that is necessary or appropriate to carry out the Audit Committee's duties.

(Compl. ¶ 25.)

Pivotal to the Complaint are allegations that Citrix, with knowledge and approval of the director defendants, violated GAAP by failing to recognize compensation expenses incurred when the improperly backdated options were granted. (Compl. ¶ 37.) These GAAP violations resulted in materially inaccurate and misleading financial statements. (Compl. ¶ ¶ 46, 57.)

In support of the motion to remand, Plaintiffs argue that there is no federal question to support removal because Plaintiffs' claims arise under state law and substantial questions of federal law need not be resolved to address each element of Plaintiffs' state law claims. (Pl. Mot. 7-9.) Plaintiffs contend that a complaint that alleges state-law claims based in part on false statements in documents required by federal securities law cannot properly be removed. (Pl. Mot. 9-11.) In

opposition, Defendants claim that to adjudicate fully the allegations that Plaintiffs chose to include in the Complaint, the Court will need to resolve multiple questions of federal law. (Def. Resp. 16.) Defendants point to various provisions of the Complaint that they claim show that the violations of law stem from the alleged failure of Defendants to have in place a federally-mandated control structure that ensured the accuracy of the financial information and compliance with GAAP. (Def. Resp. 17.) In addition, Defendants assert that Plaintiffs seek to avoid federal question jurisdiction through artful pleading since it is actually federal law, not state law, that provides the duties and obligations at issue here. (Def. Resp. 14.) Lastly, Defendants argue that, in deciding the motion to remand, the Court must consider the strength of the federal interest at stake. (Def. Resp. 20.)

II.  Legal Standard

On motion for remand, the removing party bears the burden of demonstrating federal subject matter jurisdiction. McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936). A party who removes a case to federal court pursuant to 28 U.S.C. § 1441 must prove that the federal district court possesses "original jurisdiction," which exists when the plaintiff's claims arise under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. § 1331. Removal jurisdiction is construed narrowly with all doubts resolved in favor of remand. See Pacheco de Perez v. A T & T Co., 139 F.3d 1368, 1373 (11th Cir.1998).

Federal question jurisdiction is governed by the "well-pleaded complaint" rule. Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  The well-pleaded complaint rule "makes the plaintiff the master of the claim, he or she may avoid federal jurisdiction by exclusive reliance on state law." Id.  Unless a federal question is presented on the face of the complaint, the case does not arise under federal law. Kemp v. International Business Machines Corp., 109 F.3d 708, 712 (11th Cir. 1997).

However, under the artful pleading doctrine, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." Franchise Tax Bd. of California v. Construction Laborers Vacation Trust, 463 U.S. 1, 22 (1983). Even when the causes of actions pled are state law, the case might still arise under federal law if the right to relief under state law requires "resolution of a substantial question of federal law in dispute." Id. at 13.

III.  Discussion

Examining the face of the Complaint, the Court finds that there is no federal question present. The Complaint alleges state law claims for breach of fiduciary duty and unjust enrichment brought as shareholder derivative claims. To prove a breach of fiduciary duty, both Florida and Delaware law require that a plaintiff demonstrate that a fiduciary duty exists, that the fiduciary breached that duty and damages resulted from the breach.[2] Heller v. Kiernan, No. Civ.A. 1484-K, 2002 WL 385545, * 3 (Del. Ch. Feb. 27, 2002); York Lingings v. Roach, No. 16622-NC, 1999 WL 608850, * 2 (Del. Ch. July 28, 1999); Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002). With respect to fiduciary duty in the corporate context, the Court notes that corporations, in general, are governed by state corporation law. CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 90 (1987). Likewise, the cause of action for unjust enrichment is well-grounded in state law. Indeed, the elements for unjust enrichment are (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp., 899 So. 2d

---

[2] Plaintiffs state that Delaware law should be applied in determining breach of fiduciary duty. (Pl. Mot. 10.) The Court need not reach that question because, regardless of which law applies, it is clear that state law governs the claim for breach of fiduciary duty.

1222, 1227 (Fla. Dist. Ct. App. 2005). Clearly, neither of these two causes of action seek relief under federal law. Nor does the Complaint expressly allege any violations of federal securities law. Thus, under the well-pleaded complaint rule, this Complaint relies exclusively on state law.

There are, however, references to federal securities laws and the Court therefore must consider whether the artful pleading doctrine comes into play. Indeed, the Complaint states that Defendants were required to comply with "federal and state laws" (Compl. ¶ 21) and that Defendants who served as members of the audit committee had a duty to serve on the qualified legal compliance committee of the company in accordance with section 307 of the Sarbanes-Oxley Act of 2002 (Compl. ¶ 25). In addition, the Complaint, in describing the duties of Defendants, quotes from Section 13 of the Exchange Act. (Compl. ¶ 22.) These passing references to federal law are not essential to proving any of the elements of the state causes of action. To the contrary, the duty to comply with federal laws was one of many duties that were allegedly breached by Defendants. But the gravamen of the breach of fiduciary duty rests on the director Defendants "knowingly approving the Company's violation of GAAP" when they rubber stamped the improper request by the officer Defendants to backdate stock option grants. (Compl. ¶¶ 56-57.) Significantly, GAAP violations are not the exclusive province of federal law and state law claims can, of course, be based on GAAP violations. See, e.g., Gordon v. Etue, Wardlaw & Co., P.A., 511 So. 2d 384, 386 (Fla. Dist. Ct. App. 1987). Furthermore, state law requires that officers and directors of corporations act in good faith to the corporation and the shareholders. Malone v. Brincat, 722 A.2d 5, 10 (Del Super. Ct. 1998); Cohen v. Hattaway, 595 So. 2d 105, 107 (Fla. Dist. Ct. App. 1992). Clearly, in proving that a breach of fiduciary duty occurred, Plaintiffs may point to evidence that the officers and directors failed to act in good faith when they made false statements. But the fact that some of those false statements

were made to the SEC and may have violated federal law is tangential to proving the breach of fiduciary duty.

Notably, Plaintiffs point to decisions by several courts that address complaints with state law causes of action that refer to federal law. In Adams v. Amdahl, the plaintiff brought a state law derivative action based on a company's stock options backdating practices. Adams v. Amdahl, No. C06-0873RSL, 2006 WL 2620400 (W.D. Wash. Sept.12, 2006). That court found that references to federal law cannot establish federal question jurisdiction, rejected that federal securities rules were essential to the plaintiff's claims for breach of fiduciary duty when state laws mandate honest reporting to shareholders, and held that GAAP violations do not require a resolution of federal law. Other courts have found similarly. In Sung v. Wasserstein, 415 F. Supp. 2d 393 (S.D.N.Y. 2006), the court examined a complaint with state law claims that rested in part on an allegation that Defendants filed a misleading prospectus, a document required by federal securities regulations. Id. at 405-06. The Sung court found that the fact that the false statements were made in federally required documents did not change the inquiry whether they were false or misleading as a necessary element under state law. Id. at 406. Moreover, the Sung court noted that, although the plaintiff's claims would be strengthened by resolution of federal securities law in his favor, resolution of the federal claims were not necessary to adjudicate the claims in the complaint. Id. The Court adopts the reasoning of these decisions in finding that, since resolution of the state claims will not require an inquiry into federal securities law, there is no basis for federal court jurisdiction.

In arguing for removal, Defendants argue that the Court should instead adopt the reasoning of Gobble v. Hellman, Case No. 1:02CV0076, 2002 U.S. Dist. LEXIS 26833 (N.D. Ohio Mar. 26, 2002), not Adams v. Amdahl. In addition, Defendants state that Grable & Sons Metal Prod., Inc.

v. Darue Engineering & Manufacturing, 545 U.S. 308 (2005) and Ayers v. General Motors Corp., 234 F.3d 514 (11th Cir. 2000) support a finding of federal jurisdiction. The Court disagrees.[3]

In Gobble v. Hellman, the court examined a complaint that alleged several state common law causes of action that the Gobble court found depended upon whether the defendants violated their duties under the Federal Exchange Act and SEC rules and regulations. Gobble, 2002 U.S. Dist. LEXIS 26833, at * 9. Based on the Gobble's court reading of the complaint, it determined that resolution of the plaintiff's claims required a "construction and adjudication of substantial questions of federal law." Id. Despite that finding, the Gobble court did recognize that some of the allegations in the complaint could support state law or federal law claims and that "[a]llegations that simply provide a factual basis for a claim and which could independently support either a state law claim or a federal law claim are generally not sufficient to create a substantial question of federal law or to confer jurisdiction to the federal courts." Id. at 8 n.1.

Here, the Court's reading of the Complaint does not lead it to conclude that adjudication of federal law will be necessary. Instead, the Court finds that the Complaint contains "[a]llegations that simply provide a factual basis for a [state law or federal law] claim." Id. Although Defendants make much of the fact that the Complaint tracks the language of Section 13 of the Exchange Act (Compl. ¶ 22), the Court finds that while there are allegations that reference federal securities law, these allegations are contained in the section of the Complaint that set forth the various duties of the directors and officers. Thus, these allegations, if proven, will provide evidence of Defendants' role in the company, but will not require an examination of federal law. (Compl. ¶¶ 22, 25.)  In other

---

[3] Defendants provide the Court with several decisions from courts outside this jurisdiction that have reached the same conclusion as the Gobble court. The Court is not bound by these decisions and chooses not to follow their reasoning.

words, the Court rejects Defendants' contention that the Court will "need to construe and interpret the Exchange Act and Sarbanes-Oxley and whether Defendants violated provisions of those federal laws" (Def. Resp. 11.)  With respect to Sarbanes-Oxley, the Complaint merely notes that the Audit Committee "[s]erves as the Qualified Legal Compliance Committee of the Company," an allegation that will hardly require an examination of federal law. (Compl. ¶ 25.)  Instead, the Court will need to examine evidence relating to Defendants' maintenance of the accounting of the company and, while there may be similarities to federal accounting requirements, that inquiry will not require delving into federal law.[4]

Defendants also argue that several of the cases relied upon by Plaintiffs, including Adams, misapply Merrell Dow Pharmaceutical Inc. v. Thompson, 478 U.S. 804 (1986). (Def. Resp. 20.) Whether or not the Court agrees with Defendants that those courts misapplied Merrell Dow is irrelevant. Merrell Dow provides ample support for finding that federal jurisdiction does not exist in the instant case.  In that case, the plaintiffs sued a manufacturer and distributor of a drug that allegedly caused birth defects. Plaintiffs brought common-law state claims, and alleged that the drug was misbranded in violation of the Federal Food, Drug and Cosmetic Act (FDCA) which created a rebuttable presumption of negligence. Id. at 805.   The Merrell Dow Court found no federal jurisdiction due to the lack of a federal private cause of action under the FDCA and stated that the

---

[4] Defendants point out that another action before this Court, Sheet Metal Workers Local 28 Pension Fund v. Roberts et al., case no. 07-60316-CIV-MARRA, is a shareholder derivative action filed on behalf of Citrix.  That complaint mirrors some of the language in the complaints in these cases, but also asserts federal claims.  Defendants argue that efficiency of judicial resources requires that all three actions should be heard in this Court. (Def. Resp. 9.)  The Court rejects that argument.  The issue before this Court is jurisdictional and federal courts are courts of limited jurisdiction.  Russell Corp. v. American Home Assur. Co., 264 F.3d 1040, 1050 (11th Cir. 2001).

"presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system." Id. at 812, 814. Moreover, the Merrell Dow Court rejected the argument that a need for uniform interpretation of a federal statute justifies federal court jurisdiction. Id. at 815.

The facts in Merrell Dow differ significantly from the facts herein, yet represent a stronger case for federal jurisdiction than here. In that case, there was no question that an element of the state court action required a finding that the drug was misbranded in violation of a federal statute. In the instant case, no element of the state claims requires inquiry or interpretation of a federal law, much less a finding that there was a violation of federal law. Thus, Merrell Dow does not require assertion of federal jurisdiction.

Nonetheless, Defendants claim that Merrell Dow found no basis for federal jurisdiction because the federal interests were not sufficiently significant, but that the federal interests are sufficiently significant here. (Def. Resp. 20.) In making that argument, Defendants point out that the later United States Supreme Court case of Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308 (2005)[5] reiterated that interpretation of Merrell Dow. In discussing Merrell Dow, the Grable court stated that Merrell Dow "*assumed that federal law would have to be applied to resolve the claim*, but after closely examining the strength of the federal interest at stake and the implications of opening the federal forum, held federal jurisdiction

---

[5] Grable concerned a former landowner who brought a quiet title action in state court, alleging that the Internal Revenue Service had given him inadequate notice of the sale of his property under a federal tax statute. In finding federal jurisdiction, the United States Supreme Court found that the issue of notice was an element of the state claim and that the federal statute's meaning was disputed. Here, there is no dispute as to the meaning of any federal law and, further, the elements of state causes of action can be proven without considering federal law.

unavailable." Id. at 316 (emphasis added).  The Grable discussion of Merrell Dow does not alter this Court's finding that federal law would not have be resolved to address Plaintiffs' claims.  Since that threshold is not met under Grable, there is no reason to weigh "the strength of the federal interest at stake and the implications of opening the federal forum."  Id.

Finally, Ayers v. General Motors Corp., 234 F.3d 514 (11th Cir. 2000) does not compel a different result.  In that case, the plaintiff brought a claim under Georgia's RICO statute, and claimed violations of federal mail and wire statutes as predicate acts when the defendant failed to report a defect as required under the National Traffic and Motor Vehicle Safety Act. Id. at 516.  The Eleventh Circuit Court of Appeals found federal jurisdiction, finding that the interplay between the federal statutes relating to the predicate acts and the National Traffic and Motor Vehicle Safety Act "make this case one of those exceptional cases requiring that we decide 'a federal question substantial enough to confer federal question jurisdiction.'" Id. at 519.  Significantly, the Ayers court found that establishing a violation of the federal mail and wire fraud statutes would be an essential element of the plaintiff's claims. Id.  Given that delving into federal law is unnecessary based on the allegations of this Complaint, this case is certainly not "one of those exceptional cases" for which the Court should confer federal jurisdiction.

For the reasons stated herein, Plaintiffs' motions to remand are granted.

IV. Conclusion

It is hereby **ORDERED AND ADJUDGED** as follows:

1) Plaintiffs' Motion to Remand to State Court [DE 10, case no. 07-61156 and DE 15, case no. 07-61157] are **GRANTED**. These matters are **REMANDED** back to 17th Judicial Circuit, in and for Broward County, Florida.

2) Defendants' Motion to Consolidate Cases [DE 6, case no. 07-61156 and DE 10, case no. 07-61157] are **DENIED AS MOOT.**

3) Defendants' Request for Oral Argument [DE 9, case no. 07-61156 and DE 13, case no. 07-61157] and Plaintiff's Request for Oral Argument [DE 12 , case no. 07-61156 and DE 17 in case no. 07-61157] is **DENIED**.

4) The Clerk shall **CLOSE** these cases and all pending motions are **DENIED AS MOOT.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 13th day of November, 2007.

_____
KENNETH A. MARRA
United States District Judge